UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMCO CORPORATION, et al., | ) | CASE NO. 5:19-cv-2418 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| MILLER TRANSFER & RIGGING CO., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to dismiss (Doc. No. 9 ("Mot.")) filed by defendant Miller Transfer & Rigging Co. ("Miller"). Plaintiffs EMCO Corporation ("EMCO Corp."), EMCO Maier GmbH ("EMCO Maier"), and Generali Versicherung AG ("Generali") (collectively, "EMCO") filed a memorandum in opposition (Doc. No. 11 ("Opp'n")) and Miller filed a reply (Doc. No. 12 ("Reply")). For the reasons set forth herein, the motion is denied.

**I. Standard on a Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts") (internal citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**II.     Discussion**

On October 16, 2019, EMCO filed its complaint against Miller, stating: "This is an action for breach of contract of interstate motor carriage arising from damage to [cargo] owned by EMCO Maier and EMCO Corp., insured by Generali, and tendered for packaging and interstate motor carriage to [Miller]." (Doc. No. 1, Complaint ["Compl."] ¶ 1.) Miller is identified as "registered with the United States Department of Transportation as an interstate carrier with U.S.D.O.T. number 120707." (*Id.* ¶ 9.) EMCO alleges that this Court "has jurisdiction and venue is proper pursuant to 49 U.S.C. § 14706(d) (the 'Carmack Amendment') and 28 U.S.C. § 1331." (*Id*. ¶ 12.)

In a series of "background" paragraphs, EMCO alleges the following relevant facts:

15.   In October 2017, EMCO agreed to hire Miller to carry and package the Cargo pursuant to the [provided] quotes . . . and, thereafter, arranged for Miller to pick up the Cargo on 16 October 2017.

16.   On 16 October 2017, Miller . . . picked up, received, and accepted the Cargo, then in good order and condition, at EMCO's facility in Cuyahoga Falls, Ohio, issued or accepted certain bills of lading to cover the subject shipment, and agreed to carry the Cargo to Clarion Warehouse in Dover, Ohio to be packaged there in seaworthy packaging.

> 17. On 16 October 2017, the Cargo was rigged and loaded onto Miller's truck in Cuyahoga Falls.
>
> 18. Once the Cargo was rigged and loaded onto Miller's truck, Miller transported the Cargo to its Clarion Warehouse in Dover for packaging.
>
> 19. Upon its arrival in Dover, Miller unloaded the Cargo into its facility and, thereafter, packaged the Cargo by wrapping it in protective film, loading it into two separate wooden crates, and nailing the crates shut.
>
> 20. On or about 14 November 2017, Miller loaded the carted Cargo onto one of its trucks and departed for the Port of Baltimore.
>
> 21. Miller delivered the Cargo at the Port of Baltimore to EMCO's nominated ocean carrier on 15 November 2017.
>
> 22. On or before 29 November 2017, EMCO's nominated ocean carrier loaded the Cargo aboard the M/V DRIVE GREEN HIGHWAY ("Vessel"), which thereafter departed for the Port of Bremerhaven.
>
> 23. The Vessel arrived at the Port of Bremerhaven on 15 December 2017 and discharged the Cargo on or before 19 December 2017.
>
> 24. The Cargo was subsequently collected by EMCO's nominated inland carrier, which delivered it headquarters [sic] in Hallein, Austria.
>
> 25. Once delivered, the Cargo was inspected and discovered to have corroded and been water damaged during transit.
>
> 26. As a result, EMCO suffered losses totaling $347,497.92, as nearly as can now be determined.

(*Id*. ¶¶ 15–26.)

EMCO then sets forth one "cause of action" under the heading "BREACH OF CONTRACT OF MOTOR CARRIAGE." (capitalization in original.) Here, EMCO incorporates by reference all previous allegations and then alleges:

> 31. As motor carrier of goods for hire, Miller was obligated by the Carmack Amendment, the terms of the bills of lading, and its agreement with EMCO to properly and safely package, transport, handle, carry, keep, care for, discharge, and deliver the Cargo.

3

> 32. Miller breached those duties by failing to adequately package the Cargo, which resulted in the Cargo being delivered in damaged condition.
>
> 33. As a direct and proximate cause of Miller's breach of its duties under the Carmack Amendment, the terms of the bills of lading, and its agreement with ECMO, Plaintiffs sustained damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $347,497.92.

(*Id.* ¶¶ 31–33.)

Miller argues in its motion that the complaint must be dismissed in its entirety because the Carmack Amendment preempts any state law breach of contract claim. It argues, in the alternative, that the complaint fails to plead a proper Carmack Amendment claim. The Court finds both of Miller's arguments lacking.

First, notwithstanding the *heading* that describes the only cause of action in the complaint, the allegations themselves, which supply the substance of any complaint, allege solely federal question jurisdiction, with no mention of supplemental jurisdiction over any state law cause of action.

Second, as the parties agree,

> under federal law, in an action to recover from a carrier [defendant] for damage to a shipment, the shipper [plaintiff] establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages.

*Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S. Ct. 1142, 12 L. Ed. 2d 194 (1964); *see also* Mot. at 38; Opp'n at 54–55. Here, EMCO alleged all three elements of its prima facie case and alleged sufficient facts to support a facially-plausible claim (*see, e.g.*, Compl. ¶¶ 16, 25–26), placing Miller on notice of the nature of EMCO's Carmack Amendment claim. Therefore, Miller's argument in its reply brief that "[t]he Court and Miller should not be left to guess what the claim is from the outset[,]" (Reply at 62) is unavailing.

4

The Court also rejects Miller's argument in its reply brief that EMCO "present[ed] no exhibits with their [c]omplaint[,]" (Reply at 63) to show "some proof that a domestic bill of lading was issued." (*Id*., *citing Am. Road Serv. Co. v. Consol. Rail Corp.*, 348 F.3d 565, 569 (6th Cir. 2003).) But *American Road Service* was decided on summary judgment, when proof of an appropriate bill of lading is required. Here, EMCO alleged that "Miller . . . issued or accepted certain bills of lading to cover the subject shipment[.]" (Comp. ¶ 16.) At this juncture, that allegation is sufficient to withstand a motion to dismiss.

Miller argues, however, that mere assertion of the existence of a bill of lading without attaching a copy to the complaint is fatal and constitutes "another independent ground for dismissal[.]" (Mot. at 64.) Miller quotes *Dials v. Watts Bros. Moving & Storage Sys.*, No. C2-03-513, 2003 WL 23208987 (S.D. Ohio Nov. 24, 2003) as follows:

> Here, the Bill of Lading between NAVL and [p]laintiffs is integral to [p]laintiffs' claim that NAVL violated 49 U.S.C. § 14706. In order for there to be a cause of action under § 14706, there must be a Bill of Lading. Indeed, the very title of § 14706 is "Liability of carriers under receipts and Bills of Lading." 49 U.S.C. § 17706 (2003). The bill of lading creates NAVL's duty to [p]laintiffs, its terms are absolutely essential to the issue of whether NAVL is liable to [p]laintiffs for violating the bill.

*Id*. at *3. But Miller is citing *Dials* entirely out of context. The issue before the court in *Dials* was whether a motion to dismiss must be converted to a motion for summary judgment because it included a copy of the bill of lading cited in, but not attached to, the complaint. The court held that conversion was not necessary, for the reasons quoted by Miller. *Id.* (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (adopting the Seventh Circuit's approach that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court in *Dials* did *not* hold that the bill of

5

lading had to be attached to the complaint to sufficiently state a claim under the Carmack Amendment for purposes of surviving a motion to dismiss.

Miller also cites the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300, *et seq.*, for the proposition that any damage to the cargo that occurred outside the United States would not be covered by the Carmack Amendment—another basis for dismissal. (Mot. at 39 n.3.)[1] EMCO does not seem to dispute that legal assertion, but argues that the damages arose "from acts or omissions caused during interstate 'transportation' of [the] cargo, with 'transportation' statutorily defined to include (as here), *inter alia*, 'the movement of . . . property' and 'services related to that movement, including . . . *packing* . . . of . . . property.'" (Opp'n at 54, quoting 49 U.S.C. § 13102(23) (emphasis and alterations in opposition brief).) These are factual matters for another day; at this juncture, it is sufficient that EMCO has alleged damage to cargo caused by Miller's actions or inactions during the entire course of the interstate transport of the cargo.

Finally, Miller asserts that damage, if any, was not discovered until the cargo arrived in Austria some time after December 19, 2017. (Mot. at 38–39; Reply at 63.) Since EMCO admits that Miller turned the cargo over to "EMCO's nominated ocean carrier" on November 15, 2017 in Baltimore, Maryland (Compl. ¶ 21), Miller argues that EMCO cannot establish that *Miller* caused the water damage discovered one month later overseas. (Mot. at 39.) Miller claims that, because the cargo was not in its control after November 15, 2017, it cannot be liable for any damage. Again, EMCO asserts that Miller's liability arises from its breach of the duty to *package* the cargo in a manner that would make it seaworthy. These, too, are questions of fact for another day.

---

[1] Miller also reserves all rights to reassert this argument at a later time.

### III. Conclusion

For the reasons set forth herein, the Court concludes that the allegations of the complaint are sufficient to survive Miller's motion to dismiss and the same (Doc. No. 9) is denied.

**IT IS SO ORDERED**.

Dated: April 20, 2020

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**